IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

LEAH D. KEARNEY,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-0080

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.   Kearney's Education and Employment Background . . . . . . . . . . . 3
    B.   Vocational Expert's Testimony from Administrative
         Hearing Held on December 5, 2013 . . . . . . . . . . . . . . . . . . . . . 4
    C.   Kearney's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . 12
         1.   Listing § 8.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         2.   Dr. Kuhnlein's Opinions . . . . . . . . . . . . . . . . . . . . . 16
         3.   RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Leah D. Kearney on August 25, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Kearney asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Kearney requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On November 16, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Kearney's Education and Employment Background

Kearney was born in 1974. In school, Kearney completed the tenth grade. She later earned a GED. In the past, Kearney worked as a photocopy machine operator and nursery school attendant.

### B. Vocational Expert's Testimony from Administrative Hearing Held on December 5, 2013

At the administrative hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who is able to:

> lift/carry 20 pounds occasionally, 10 pounds frequently. This individual could stand/walk/sit six hours each in an eight-hour workday.
>
> Her ability to push/pull within those weights and operation of hand controls would be limited to frequent, but no limitation within those weights on foot controls. She could frequently climb ramps, stairs. Never climb ladders, ropes or scaffolds.
>
> Frequently balance, stoop, kneel, crouch, and crawl. She could do frequently handling and fingering. She would nee[d] . . . to avoid concentrated exposure to extreme could, extreme heat, hazards such as heights and dangerous machinery, humidity and vibrations.
>
> Further, this individual is limited to simple, routine tasks and she could have only short-lived superficial contact with the public, coworkers or supervisors.

(Administrative Record at 97.) The vocational expert testified that under such limitations, Kearney could perform her past work as a photocopy machine operator.

Next, the ALJ inquired whether changing the hypothetical individual's handling and fingering to occasional, would allow the individual to continue to perform the photocopy machine operator job. The vocational expert responded that with the handling and fingering limitations changed to occasional, Kearney could not perform the photocopy machine operator job. The vocational expert, however, testified that under such limitations, including being limited to occasional handling and fingering, Kearney could perform the following light, unskilled jobs: (1) counter clerk, (2) school bus monitor, and (3) tanning salon attendant.

Finally, the ALJ and vocational expert had the following colloquy:

> Q: All right. If I change the limitations that she couldn't do any bending, kneeling or crawling, no lifting, no pushing, pulling or carrying, would any jobs be possible?
>
> A: No.
>
> Q: All right. And if she had to work at slow pace for a third of the day, would any jobs be possible?
>
> A: No.

(Administrative Record at 98.)

### C. Kearney's Medical History

On October 10, 2011, Kearney was referred by Disability Determination Services ("DDS") to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. In reviewing Kearney's medical history, Dr. Stientjes noted:

> Epidermolytic hyperkeratosis, a rare genetic disorder, is the primary skin problem. It is present at birth or shortly thereafter with lesions developing on palms or feet and some appearance at other joint areas as well. Blistering and extreme callusing can be observed.

(Administrative Record at 413.) Dr. Stientjes also thoroughly addressed Kearney's present and past mental health history. Dr. Stientjes noted Kearney maintained good eye contact, but "has an anxious, self-conscious quality. She keeps palms down as much as possible. There are some open cracks at flexation areas."[2] Kearney reported life-long problems with both depression and anxiety. Specifically, Dr. Stientjes noted:

> [Kearney reported] that her father was considered a hermit because he would seldom go out in public due to a similar skin problem. She feels very strongly that she is being punished and feels guilty almost all the time. She is disappointed in herself and feels like a failure. . . . She has trouble making decisions and claims that it is hard to keep her mind on

---

[2] Administrative Record at 414.

anything for long. In addition to depressive symptoms, anxiety is also very high, with most symptoms endorsed to at least the moderate level.

(Administrative Record at 414.) Dr. Stientjes also found that Kearney has obsessive/compulsive components to her "contemplation of her skin problems. She is self-conscious to the point of self-absorption."[3]

Upon examination, Dr. Stientjes diagnosed Kearney with major depressive disorder and anxiety disorder. Dr. Stientjes determined Kearney would have the following work limitations:

[Kearney] can understand and remember simple oral and written directions. There may be some interference from anxiety on carryover and basic decision making in a timely manner. She is avoidant of much personal contact with the public because she is self-conscious, and realistically the public may have some concern about her condition being something contagious or contaminating. Safety judgment should be intact. Responses to changes in expectation will require some individual attention to prompt and remind.

(Administrative Record at 415.) Dr. Stientjes concluded:

[Kearney] is mildly to moderately depressed, but is not treated for that disorder currently. There is social sensitivity and some reclusive patterns. Prospects for sustained full-time gainful employment are marginally limited but not out of the question.

(Administrative Record at 415.)

On October 25, 2011, Dr. Sandra Davis, Ph.D., reviewed Kearney's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Kearney. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Kearney with major depressive disorder and

---

[3] *Id.*

anxiety disorder. Dr. Davis determined Kearney had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis found Kearney was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. Dr. Davis concluded:

> [Kearney] has problems with sustained concentration, dealing with the public, and coping with changes per [consultative examiner]. She does not engage in regular mental health care. Primary work-related issues, however, are with her skin condition.

(Administrative Record at 433.)

On December 7, 2011, Kearney was referred by DDS to Dr. John D. Kuhnlein, D.O., for a consultative examination. Dr. Kuhnlein reviewed Kearney's medical history as follows:

> [Kearney] has a history of epidermolytic hyperkeratosis since infancy. . . . She has been treated with topical steroids and with topical ammonium lactate, which helps some. . . . She has symptoms of scaling, rash, fissuring of skin on the palms and soles and extensor surfaces of the joints. She has pain ranging from 1 to 8 with an average of 5-6/10. She has problems with blistering on the hands and feet and in various areas in the summer and with cracking of the skin and dryness of the skin in the winter. Her symptoms are worsened with activity.

(Administrative Record at 446.) Dr. Kuhnlein also discussed activities of daily living with Kearney and found she:

> has problems with self-care and personal hygiene activities, communication, physical activities, nonspecified hand activities, and travel. She states that her epidermolytic hyperkeratosis is on the palms of her hands and the soles of

7

> her feet, which often makes almost everything listed above a
> challenge for her. It is also located anywhere she bend[s].
> She states that her "normal" skin is very delicate as well.

(Administrative Record at 447.) Upon examination, Dr. Kuhnlein diagnosed Kearney with a severe skin condition. Because of her skin condition, Dr. Kuhnlein opined Kearney would have difficulty performing many activities. Specifically, Dr. Kuhnlein determined:

> [Kearney] needs to avoid extremes of hot or cold weather and
> cannot work in moist environments. She cannot do any
> bending, kneeling, or crawling as this would irritate the skin
> surfaces. She does not do any lifting as this would also irritate
> the skin and cause further problems. She should do no
> pushing, pulling or carrying. There would be no limitations
> on sitting or standing and she could do occasional walking
> because of her skin. She cannot work on a production line nor
> do other physical activities.

(Administrative Record at 449.)

On December 28, 2011, Dr. Matthew Byrnes, D.O., reviewed Kearney's medical records and provided DDS with a physical RFC assessment for Kearney. Dr. Byrnes determined Kearney could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) limited to push and/or pull only frequently with her upper and lower extremities. Dr. Byrnes also determined Kearney could frequently climb ramps and stairs, balance, stoop, and crouch, but never climb ladders, ropes, or scaffolds, and never crawl. Dr. Byrnes also found that Kearney should be limited to frequent bilateral handling (gross manipulation) and fingering (fine manipulation). Dr. Byrnes further opined Kearney should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards, such as machinery and heights. Dr. Byrnes found no visual or communicative limitations.

On March 5, 2012, Kearney met with Dr. Matthew G. Fox, M.D., for a check of her epidermolytic hyperkeratosis. Dr. Fox noted:

> she continues to be very frustrated by this and knows that there is really not much that can be done medically. She has seen a number of dermatologists in the past for her skin condition. Her most prominent changes occur on her hands and feet but also any flexural crease. She tells me if she sits too long she will get changes even involving the buttock. It is mostly cracking, peeling, scaling, and pain. . . . She tells me she has been out of work for about a year because of her inability to function. She did work as a para-educator in the school system but because of her cracking and peeling on her feet it is hard to walk. Using her hands can be difficult. . . . She finds it very difficult to open cans, grasp things, turn doorknob, and even hold pencils and pens for writing. . . . She does lubricate her skin very aggressively. Topical steroids are ineffective for her condition.

(Administrative Record at 471.) Upon examination, Dr. Fox noted scaly skin and cracked fissures on the palms of her hands and soles of her feet. Dr. Fox diagnosed Kearney with epidermolytic hyperkeratosis. Dr. Fox opined "[u]nfortunately there is not a whole lot we can do for [Kearney] except encourage her to continue to moisturize her skin aggressively. I am a little bothered by the intensity of her symptoms and how it is effecting [*sic*] her functioning ability."[4]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Kearney was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

---

[4] Administrative Record at 472.

(1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of

other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Kearney had not engaged in substantial gainful activity from June 1, 2010 through March 31, 2012, her date last insured. At the second step, the ALJ concluded from the medical evidence Kearney has the following severe impairments: epidermolytic hyperkeratosis and major depressive disorder. At the third step, the ALJ found Kearney did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kearney's RFC as follows:

> [Kearney] had the residual functional capacity to perform light work . . . in that she can lift and carry 20 pounds occasionally and ten pound frequently. She can stand, walk and sit six hours each in an eight-hour day. She can frequently push and pull within those weight limitations. There are no limitations within those weight limitations with the operation of foot controls. She can frequently climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch and crawl. She can occasionally handle and finger. She must avoid concentrated exposure to extreme cold, extreme heat, hazards such as heights, dangerous machinery, humidity and vibration. She is limited to simple and routine tasks. She can tolerate short lived and superficial contact with the public, co-workers and supervisors.

(Administrative Record at 26.)  Also at the fourth step, the ALJ determined Kearney is unable to perform her past relevant work.  At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Kearney could work at jobs that exist in significant numbers in the national economy.  Therefore, the ALJ concluded Kearney was not disabled.

### B. Objections Raised By Claimant

Kearney argues the ALJ erred in three respects.  First, Kearney argues the ALJ failed to properly address or determine whether she is disabled pursuant to Listing § 8.02.  Second, Kearney argues the ALJ failed to properly consider the opinions of Dr. Kuhnlein, an examining physician.  Lastly, Kearney argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence.

### 1.  Listing § 8.02

At step three of the five-step sequential analysis, an ALJ is required to determine whether a claimant's alleged impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a claimant's impairment, in fact, meets one of the impairments in the "Listings," then the ALJ must find that he or she is disabled.  Kearney argues she is presumptively disabled because she meets or equals Listing § 8.02.  Kearney maintains the ALJ failed to adequately address whether she meets or equals Listing § 8.02, and merely summarily determined she did not.  Kearney asserts that the ALJ's failure to properly and adequately address Listing § 8.02, and find her disabled based on the Listing requires remand for further consideration by the ALJ.

In order to establish the criteria for Listing § 8.02, a claimant must show that he or she suffers from ichthyosis, "with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."[5]  20 C.F.R. Pt. 404, Subpt. P, App. 1,

---

[5] Ichthyosis is a family of genetic skin disorders which includes epidermolytic
(continued...)

§ 8.02. The regulations define "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(C)(1). The regulations provide examples of such skin lesions:

    a.    Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

    b.    Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

    c.    Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(C)(1)(a)-(c). The burden is on the claimant to show that his or her impairment meets or equals a listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Furthermore, in order to meet a listing, "'an impairment must meet all of the listing's specified criteria.'" *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.").

    In her decision, the ALJ addressed Listing § 8.02 by simply stating "the undersigned has reviewed Listings 8.02 for Ichthyosis . . . and does not find the medical

---

[5](...continued)
hyperkeratosis, the skin disorder diagnosed for Kearney.

evidence supports the requirement of extensive lesions that persisted for three months despite continuing treatment as prescribed."[6]

A review of the record reveals genetic testing in 1992 confirmed Kearney has ichthyosis, specifically epidermolytic hyperkeratosis.[7]

In December 2011, Dr. Kuhnlein, a consultative examining doctor, again confirmed Kearney suffered from epidermolytic hyperkeratosis:

> [Kearney] has a history of epidermolytic hyperkeratosis since infancy. . . . She has symptoms of scaling, rash, fissuring of skin on the palms and soles and extensor surfaces of the joints. She has pain ranging from 1 to 8 with an average of 5-6/10. She has problems with blistering on the hands and feet and in various areas in the summer and with cracking of the skin and dryness of the skin in the winter. Her symptoms are worsened with activity.

(Administrative Record at 446.) Upon physical examination, Dr. Kuhnlein also noted Kearney had difficulty making a full fist with her right hand, and had diminished grip strength in her right hand.[8] Dr. Kuhnlein also addressed the effect epidermolytic hyperkeratosis has on Kearney's activities of daily living:

> [Kearney] has problems with self-care and personal hygiene activities, communication, physical activities, nonspecified hand activities, and travel. She states that her epidermolytic hyperkeratosis is on the palms of her hands and the soles of her feet, which often makes almost everything listed above a challenge for her. It is also located anywhere she bend[s]. She states that her "normal" skin is very delicate as well.

(Administrative Record at 447.) Finally, Dr. Kuhnlein determined Kearney has the following functional limitations:

---

[6] Administrative Record at 25.

[7] *See id*. at 382-86.

[8] *See* Administrative Record at 449.

> [Kearney] cannot do any bending, kneeling, or crawling as this would irritate the skin surfaces. She does not do any lifting as this would also irritate the skin and cause further problems. She should do no pushing, pulling or carrying. There would be no limitations on sitting or standing and she could do occasional walking because of her skin. She cannot work on a production line nor do other physical activities.

(Administrative Record at 449.)

Dr. Fox also treated Kearney's epidermolytic hyperkeratosis. In March 2012, Dr. Fox noted Kearney had the most difficulties with her hands and feet. For example, Dr. Fox found "[u]sing her hands can be difficult. . . . She finds it very difficult to open cans, grasp things, turn doorknob, and even hold pencils and pens for writing."[9] In September 2012, Dr. Fox noted:

> [Kearney] continues to have a lot of trouble with her epidermolytic hyperkeratosis. Her hands are very irritated. She gets blisters on her buttock. Feet are also very irritated. It makes it very difficult for her to do any activities involving her hands. Even sitting is difficult on her buttock. Her hands get swollen. . . . She has a hard time moving her fingers because of the swelling and irritation.

(Administrative Record at 500.) In March 2013, Kearney continued to have difficulties with her epidermolytic hyperkeratosis. Dr. Fox noted Kearney's hands were dry and tight preventing "flexibility and dexterity involving her hands and fingers. . . . Her hands are swollen. She gets blisters under her skin of her hands."[10] Dr. Fox also noted Kearney's feet were painful to the touch.

Finally, in November 2013, Kearney was evaluated at the University of Iowa Hospitals and Clinics in the Dermatology Clinic. She was again diagnosed with epidermolytic hyperkeratosis. Upon examination, Dr. Brian L. Swick, M.D., found "[t]he

---

[9] *Id.* at 471.

[10] Administrative Record at 510.

most severely affected areas include the palms and soles, as there is extensive thickening of skin, with overlying fissuring. There is noted decreased range of motion."[11]

Having reviewed the entire record, it is undisputed Kearney has ichthyosis, specifically epidermolytic hyperkeratosis. There is also evidence from multiple treating and examining sources (Drs. Kuhnlein, Fox, and Swick) that Kearney suffered from lesions on her hands and feet that caused limitations with gripping, walking, and performing physical activities, such as lifting and pushing or pulling. Under such circumstances, the Court finds the ALJ's generic statement that she did not find medical evidence to support Kearney meeting or equaling Listing § 8.02, without any further reasoning or elaboration, is inadequate and requires remand. Accordingly, on remand the ALJ must fully consider and explain her reasons for finding whether Kearney does or does not meet or equal Listing § 8.02.

### 2.  *Dr. Kuhnlein's Opinions*

Kearney argues that the ALJ failed to properly evaluate the opinions of her consultative examiner, Dr. Kuhnlein. Implicitly, Kearney also argues that by improperly discounting Dr. Kuhnlein's opinions, the ALJ's RFC assessment is flawed because it does not fully address her functional limitations. Kearney concludes that this matter should be remanded for further consideration of the opinions of Dr. Kuhnlein, and how Dr. Kuhnlein's opinions relate to her RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion:  "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve

---

[11] *Id*. at 612.

conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent' with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In her decision, the ALJ thoroughly reviewed Dr. Kuhnlein's findings, but failed to explain the weight provided to Dr. Kuhnlein's opinions. The ALJ simply stated "[t]he undersigned accords great weight to many of the limitations set forth by Dr. Kuhnlein, but does not find [Kearney] is as limited in standing and walking."[12] The ALJ offers no explanation for why Kearney is not limited in standing and walking, and points to no evidence in the record to support her assertion that Kearney is not limited in standing and walking. Having reviewed the entire record, he Court concludes that the ALJ failed in her duty to fully address, let alone resolve, the conflicts, if any, between Dr. Kuhnlein's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The

---

[12] Administrative Record at 29.

Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Kuhnlein's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds this matter should be remanded for further consideration of Dr. Kuhnlein's opinions, including consideration of how Dr. Kuhnlein's opinions relate to Kearney's RFC determination.

### 3. RFC Assessment

Kearney argues the ALJ's RFC assessment is flawed. Specifically, Kearney argues the ALJ's RFC assessment is not supported by substantial evidence. Kearney concludes this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th

Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In section *IV.B.1*, the Court determined remand was necessary because the ALJ failed to adequately address whether Kearney meets or equals Listing § 8.02, including consideration of multiple medical sources that address Kearney's epidermolytic hyperkeratosis. Additionally, in section *IV.B.2*, the Court, again, determined remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the opinions of Dr. Kuhnlein, a consultative examining physician. Because the ALJ did not fully and fairly develop the record with regard to multiple medical source opinions, the Court finds the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court finds that remand is necessary in order that the ALJ make her RFC assessment for Kearney based on all the relevant evidence.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) adequately address or explain her reasons for determining that Kearney does not meet or equal Listing § 8.02; (2) fully and fairly develop the record and properly consider the opinions of Dr. Kuhnlein; and (3) base her determination of Kearney's RFC on all the relevant evidence. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must reconsider and fully address whether Kearney meets or equals Listing § 8.02. The ALJ must also fully and fairly develop the record with regard to Dr. Kuhnlein's opinions, including consideration of how Dr. Kuhnlein's opinions relate to Kearney's RFC determination. Lastly, the ALJ must make her RFC determination based on all of the relevant evidence.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ____ day of June, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA